Next case is No. 2010-1178 SHINYEI CORP v. United States. Mr. Baer. Good morning, Your Honors. May it please the Court, Charles Baer for Appellant SHINYEI CORP of America. This is the third time we have appeared before you in this matter. On the previous two occasions, you reversed CIT dismissals of our case and remanded with instructions to reach the merits. When the CIT finally reached the merits, the government conceded the merits. The Commerce Department admitted on the record below that in 1998 it issued erroneous liquidation instructions that omitted information necessary to liquidate our entries with the anti-dumping duty needed to be deserved. Can I just get some clarification about what your view is of the law in terms of how the CIT erred? Is the dispute here between whether or not if the initial action was not substantially justified, that's sufficient to establish that the government's position is not substantially justified? Is that what you need us to construe the law as in order to win? All that we ask you to construe is that what you just described, that an unjustified agency position can decisively outweigh even a justified government litigating position. And what are your best cases for that? It is a legitimate perspective, and which Judge Rustani failed to consider in this case. And what are your cases for that? I mean, we have some support. You know, we've quibbled, I guess, the briefs quibble about the footnote in the other case. But that that perspective is a legitimate perspective? Well, for most notably, this Court's decision in the Chu case. Right. The legislative history of the 1985 amendment to EJA, where Congress said that it added the agency position to the definition of position of the United States, contemplating that when the agency takes an unjustified position, which causes the litigation, the government cannot escape EJA liability by then taking reasonable positions in the litigation. I can cite, a brief cite, any number of cases to this. Even the government cites some cases to that effect. And I would also cite the… Let me try to understand your argument. Your argument is not that we ignore the litigation behavior, but when taken as a whole, the pre-litigation activities by Commerce, in conjunction with the litigation behavior, establish substantially unjustified positions. That you weigh everything together, and at the end of the day, here are the scale tips in the substantially unjustified category. That is correct. You're not saying we ignore their litigation behavior? No, not at all. You may find that the litigation position was unjustified as well. We have arguments on that as well. The key to our case is that it's a legitimate, well-established perspective that when the agency takes a pre-litigation position that is unjustified, and then forces the person to go to court to get what it deserves, the government cannot avoid EJA liability by taking reasonable positions in the litigation. It's a legitimate perspective. Our point is that EJA's client didn't consider it. It seems a little different than what Judge Moore just asked you. You seem to be saying now that if the initial position taken by Commerce or the government is not justified, then no matter what they do in litigation and how justified independently the litigation positions may be, they lose. Their position is not justified. It's not a per se rule. The Ninth Circuit in the Mayroth case, if I'm pronouncing that correctly, came out and said we're not going to make a per se rule here that if the agency is unjustified, the EJA applicant always wins. But they came pretty close to that. It's a perspective that has to be considered. The Court of International Trade considered it. How are we supposed to reverse her? Isn't the standard review an abuse of discretion? She looked at the whole thing. So if she's allowed to look at everything and then weigh it, your dispute with her is she gave too much weight to one piece and not enough weight to another piece. How are we supposed to as appellate report do that? Our dispute is that looking at the agency position, she never assessed whether Commerce's position in issuing the erroneous instructions had a reasonable basis in fact in law. She looked at whether their actions in issuing those instructions were in bad faith, were culpable. She never assessed the reasonableness of Commerce's position. She looked at whether its conduct was culpable. And because she found that its conduct was not culpable, because they admitted that they had issued these instructions inadvertently or negligently, she said, well, in that case, the agency's position is, she said, non-determinative. But she treated it as irrelevant. Well, she does go on to say this negligence is but one part of the agency's conduct and is a non-determinative factor. It seems to me that's what you're saying, that it's only one part that you do have to look at all of the litigation and that it's not the part that's exclusive, that that in and of itself can determine it. You have to weigh it against everything else. That's not what she said, Your Honor, with all due respect. I was just reading her opinion. Her opinion says that the inadvertence or neglect, negligence, was but one part of the agency's conduct. Right. That's not true. The erroneous liquidation instructions here were the entirety of the agency's conduct. She was quoting language from this Cummings decision, the Sixth Circuit decision in 1991, where indeed the inadvertent failure to consider certain evidence was a small part of the agency's conduct. Most of the agency's conduct was upheld on review and found to be substantially justified. She took language from a Cummings case in 1991 in the Sixth Circuit that had no application to our case and stuck it onto our case. So what are you asking us to do here? You're not asking us to just reverse her and award aegyphies, right? You're asking us to send it back to her with instructions? Well, it's not your place to redo her substantial justification assessment. You can review what she did, but it's not for you at the appellate level to make an assessment of your own. What we're asking you to do is send it back to the CIT, whether to her or someone else, and to say you must look at whether the Commerce's position had a reasonable basis in fact in law, not whether its conduct was culpable or not. You must fairly assess what Commerce did. Their action was not just a part of their action. It was all of their action. You must also consider, as cannot be disputed here, that Commerce's position is what created the government's litigating positions. They wouldn't have existed without Commerce's action. I'm confused. I thought whether there's a substantial justification is a question of fact. Is that right? Whether there's a substantial justification for a government decision. Is it an issue of fact? Well, it is a discretionary decision, but what the standard is. No, I asked you if it was a question of fact in this case. When she decides if it is substantially justified, was that a factual determination on her part? No, it wasn't, because she never decided that Commerce's position was substantially justified. Sir, I'm not asking you about facts of this case. I'm asking you an objective legal question. Is whether or not the agency's action substantially justified a question of fact or not? In the abstract, yes. A question of fact? Yes. In the abstract, yes. But your previous argument a few minutes ago confused me, because I thought you were arguing to us that it was not substantially justified, and if we could find that she clearly erred, as a matter of fact, I don't see why you're not arguing to us to reverse. I don't understand you telling us we shouldn't decide substantial justification in the first instance, and all of that. I mean, if she made a clearly erroneous fact-finding, why wouldn't the response be that we reverse? Well, if you're willing to do so, by all means. But I thought a minute ago you told me it would be inappropriate for me to do so, so I'm trying to understand. Just on the basis that the substantial justification really should be made at the trial court level, ideally. And so should every finding of fact be made at the trial court level. But we're really inquiring as to what happens next. This is the third time this case has been here. Connors has, I think the word is confessed, admitted, they made a mistake right at the threshold that started this whole operation. Yes, they did. And yet I don't hear now your suggesting that it's time to put an end to all of this, figure out the law, maybe even the equities, and try and close it down. You're asking for a remand to do it again? I didn't go so far as to ask you to actually make the decision here. I did request that you send it back to the court with instructions to do it the right way. Our whole point is that she really did it the wrong way. And that's a question of law, right? Yes. You're saying that she did it as a matter of law. It's a question of law within abusive discretion review. And that she misapplied the substantial justification legal standard by looking to whether the agency's conduct was culpable, not whether its position was justified. So is it she failed to apply the law properly because she didn't adequately evaluate the agency's pre-litigation conduct as she was supposed to as part of this? She didn't apply the proper legal standard. And in terms of your fact question, she also misconstrued the nature of the agency's conduct. It wasn't just part of the agency's conduct. It was all of it. But I want to go to the first one. Am I understanding it right when you say she didn't apply the proper legal standard I don't understand exactly what you mean. Is it the legal standard that I just said, which is she didn't properly take into account the pre-litigation conduct, the way in which she was supposed to? Or what exactly is the legal error that you say she's made? That's what I'm trying to understand. In assessing whether the government's position was substantially justified, what the courts have done is they've taken each relevant determinative government position and they have applied the Pierce test to it. Did this position have a reasonable basis in law and in fact? And they apply it to each position, whether it be pre-litigation or in litigation, whether it be on the merits or a separate defense. If all of the positions are found to be reasonable under Pierce, then that's the end of the matter. The government's overall position is reasonable. If some of them are reasonable and others are not, then the courts have to take these various positions and weigh them by their relative importance, by their causative effect, and make an overall assessment whether the government's overall position tips to the reasonable or unreasonable side of the scale. Chief Judge Rustani did that with respect to the government's two litigating positions, the deemed liquidation defense and the actual liquidation defense. With regard to the Commerce's pre-litigation position, she never determined whether that pre-litigation position had a reasonable basis in fact in law. All she determined was that it wasn't culpable and therefore it's just part of the Commerce's conduct, which in fact it wasn't, and therefore it's non-determinative, which really meant she read it out of the calculus. She gave it no weight. She gave it no weight. You're saying she shared as a matter of law. Yes, giving it no weight. I understand your argument. And the statute requires that it be included in the calculus. Are you also alleging that as a matter of law she applied the wrong standard to that by use of, she says, unless bad faith is established? Oh, yes, absolutely. Are you saying that bad faith is the wrong standard to be applied for unreasonableness? If the government's position on her particular position has no reasonable basis in fact or law, then under 2412D, which is our aegis section, it doesn't matter whether the government assumed that unjustified position by inadvertence or by negligence or after due deliberation or in bad faith or with malice of forethought. Degree of culpability, the state of mind, why they took that position is utterly irrelevant to the calculus. She made it relevant. She found another way to not consider the perspective that the agency's position might outweigh the government's litigating position by rendering the agency's position irrelevant. Is the position you're espousing on this matter necessarily related to the fact that she didn't let your evidence in? You have a whole other section, but let's assume that we disagree with you on that piece and say she did not abuse her discretion by not allowing in your submission. Well, we made an offer of proof as to what we would have said had she allowed us to respond. Well, let's assume we disagree with you on that one piece, that we think she was perfectly within her, you know. Yes, then our arguments survive and are good even if she hasn't let us, even if you agree that she need not have let us respond to the government's challenge. Our points are still good. The law is still the law whether she let us tell her that or not. It might have spared us an appeal if she had accepted our submission and considered our arguments, but she chose not to. But is she going to need your submission in order to do what you're at least advocating as the appropriate analysis of the underlying facts and what happened here? Well, we do ask you when you send this back to her or to the court or to whomever to direct them to let us respond to the government's showing so that the court may hear both sides of the issues here before making a considered decision. But let's assume we didn't agree. We thought it was within her discretion to not allow you to respond. Then what happens if we send it back on the cold record without the response? If you send it back. Is that still sufficient basis for you to, you know, make the arguments you're making here? Well, we've made the arguments here. You've considered them. If you accept them and reflect them in your decision, perhaps it will be enough, but we really do believe that the court should not hear only one side of the issue. We didn't have to make a negative showing on substantial justification in our application. The law is clear on that. She imposed that requirement on us, just made it up. It doesn't exist. She should allow us to respond to the government's showing. We really hope that you will direct us. But there's nothing in the statute compelling a response or compelling her to consider it, right? It leaves all of the relevant regulation or statute leaves it entirely with her and her discretion as to whether to accept a response. And we submit respectfully that it is an abuse of her discretion, a per se abuse of her discretion to hear only one side of the case. So you're saying that unless a district court or a court of international trade allows the other side to respond, they've abused their discretion? Yes, I would say so. And please note that the CIT is the only court in the land that has this rule, which says that once the government responds to the application, no other papers may be filed. If we file each application in district court or the court of veterans' appeals or in the court of veterans' claims, we've got a right to respond. Are we supposed to strike down the CIT rule? No, I'm not asking you to strike down the rule. I'm asking you to say that when the government opposes an application on the basis that the position was substantially justified and makes its required showing, it is a per se abuse of discretion for the CIT to agree with the government's showing, to accept the government's showing, without directing the applicant to respond to the government's showing. Remember, only the government had its say here. We did not. Okay, let's hear from the government. Well, we'll save you some rebuttal time, Mr. Bates. Yes, please. Thank you. Mr. Goodman. Good morning, Your Honor, and may it please the Court. This is not a general case. The position of the agency began when the case was filed in 2000. Immediately, the Department of Justice looked at the case and thought that the Court had no jurisdiction over the case. So the jurisdictional arguments took up the bulk of the time in this case, and that was the entirety of the agency's position until... Did the agency ever hold a belief that it was correct in excluding Shin Yeh? It's unclear, Your Honor. There's nothing in the record about what the agency... In 2000, there's a statement that it's inadvertent, right? Where is that? Yes, Your Honor, there was an inadvertent mistake on the part of the agency. 1998, Commerce in Volume 2 of the Appendix at page JA626 says that Shin Yeh was, quote, inadvertently omitted from the order. So it seems, if that's a Commerce statement in 1998, it seems clear that way back in 1998 they realized it was inadvertent. There's no question that they made an error and that they acknowledged they made the error. It's not clear when they knew exactly that they had made that error. Why does that matter? I mean, this really does get us to the fundamental of what this statute is about. They made an error. We've had 10, 12 years of litigation. Finally, the error has been corrected as far as the petitioner is concerned. And here we have a statute which has made it very clear that when a citizen turns out to have been through a legal system that was not justified, there was an error. You can't say that it was justified. There was an error. So where does that take us? Was there any attempt to negotiate the attorney fees or come to terms on this aspect along with settling the entire case? It's my understanding that, yes, Your Honor, such discussions did take place and the parties were not able to reach agreement. You're absolutely right that the point of EJA is to encourage somebody to go in and fix agency error. But when Congress admitted EJA in 1985, they explicitly said they did not want to exclude the government from asserting jurisdictional or technical offenses. And that's exactly what we have here. But let's back up. I mean, Shinye properly appealed a duty assessment. Commerce determined Shinye, along with the other appellants, were correct. They shouldn't have to pay the 45%. They should get a lesser amount, which I think is confidential, so I won't say what it is, but it's a minimal amount by comparison. And Commerce says, yes, all of these folks should get this minimal amount. And they write an order to Customs instructing them to liquidate at the minimum amount, but they leave Shinye off the list. Commerce is then brought to their attention. Shinye brings it to their attention. Hey, you forgot us. We're one of the appellants and you didn't put us on the list. Commerce acknowledges in 1998 we inadvertently left them off the list, page JA626. So there's an acknowledgement, it seems to me, that they're inadvertently left off the list, and yet it isn't corrected. And this is all prior to the 2000 liquidation. So didn't the government have an opportunity to correct this situation and give them back their money? Because the government's the one who decided that they didn't owe that high percentage rate. Your Honor, Commerce didn't know in 1998 that they had made the error. That document on page 626. Let's say they didn't know until now. Let's say it only came out now, that there was an error 12 years ago that put Shinye and the government through this elaborate litigation up and down on appeal and everything else. Why should that make any difference? It's not the case that the error is the entirety of the agency action. The agency committed an error, admitted to have committed an error, but then when it was brought to their attention, and once the jurisdictional issues were decided, the first thing the agency did was admit the error and pay Shinye what it was due under the statute. Wait, wait, wait. You're saying the first thing... The first thing the agency did, Your Honor, after the jurisdictional issues were decided. Okay, but why didn't they do it sooner? Shinye notified the agency in March 2000. That's when its first lawsuit was filed. They were inadvertently left off the list. By that point, clearly the agency is on notice because that's the first lawsuit that was filed. The customs didn't liquidate until August 2000. Why? In March, they filed a lawsuit saying, You forgot us. You didn't list us on the list. The government had months, many months, in which this issue was squarely presented to them when they could have corrected the situation before the liquidation occurred. Now, why that's significant is the whole reason you argued to us there was no jurisdiction was, Oh, sorry, we can't. There's no jurisdiction. The liquidation already occurred. But what about the fact that they notified you of the error prior, months prior to the litigation, and the government did nothing? Why isn't that a really important aspect of whether or not the government's behavior was substantially justified? At that time, Your Honor, it wasn't clear that Commerce could fix the error. It wasn't a situation where it was... Why couldn't Commerce just issue another order saying, Customs, because they left Shinye off the first list. Why couldn't they just issue another order directed specifically to Shinye? Liquidate Shinye's at 11% or whatever it was. As this Court said in ASI, it's not always the case that Commerce can fix errors... But in this case, they could. The regulation specifically allowed them to issue orders relevant to liquidation, so they could fix it in this case, and they had months upon which being presented with the error where they did nothing. Instead, they left the goods liquidated and then hid behind the, sorry, already liquidated, no jurisdiction now argument. At that time, it wasn't clear to Commerce what the error was. Again, when they brought the case in 2000, they were saying, this is either a Customs error or it's a Commerce error or some combination. It wasn't clear to anybody what exactly the error was. But that's like an accident being caused and everyone saying, wasn't me, it was him. The government knew it was their fault. Shinye was left off inadvertently. So whether it's a Customs error or Commerce's error, it's irrelevant. It's a government error, it was brought to your attention at a time where you could correct it easily, and it wasn't corrected, and then once the goods liquidated, then you raised what might be a substantially justified no jurisdictional argument, but that's only because you waited long enough to let the bad thing occur when you knew about it. So that's the part that I'm having trouble getting my head around because I don't think Judge Rustani's opinion took any of that into account. I think, Your Honor, she took it into account. She found it was non-determinative in the big picture because in this case, 10 years of litigation was about those jurisdictional questions and was not about the underlying error. You're absolutely right, Your Honor. There was an error in the first place that led up to the whole thing, and Commerce was eventually made aware of the error. Nothing in the record shows exactly when Commerce knew the details of what this error were or how to correct it. They filed a complaint in March of 2000 alleging the error. It said specifically, you left us off the order. How can that not put the government on notice? It also said, Your Honor, that perhaps the error is due to Customs misreading the liquidation instructions. It wasn't clear how the liquidation instructions were erroneous. There were a number of possibilities. But it was clear that there was an error, and why does it matter again whether it was a Customs error or a Commerce error if you're all part of the same government? Because, basically, coming back to ASI, Your Honor, that it's not clear that Commerce can always fix their errors, and in this case it wasn't clear to Commerce then that they could go in and they should go in and address this kind of error. What legal standard should be applied? Should the Court of Interest... It's unclear to me what standard the judge here applied, but what is the government's position about the standard to be applied in evaluating this? Well, for this Court, at this point, it's an abuse of discretion because it is a fact question. But what's the legal standard, that you have to consider all the conduct, including the pre-litigation conduct, and how do you assess that? I mean, she says unless bad faith is established, a mere critical error at the agency level does not automatically render the United States position unreasonable. Do you agree with that? Yes, Your Honor. What is then the standard, whether or not it was unreasonable, and can you illuminate, therefore, what that means? It's not always easy to compare the different stages of the litigation and come up with one overall determination of whether the government was substantially justified. And that's what the party has disputed in the briefs about how to apply CHEO. And in that case, this Court said, though it's apples and oranges comparison, that's something the trial court has to do, is to look at the litigation position, the agency position, put it all together and reach one overall determination. So what happens if we find that the original pre-litigation conduct was unreasonable and then the litigation positions are reasonable? What happens? Is that entirely within the discretion of the judge to just underline, you know, the judge below, to just weigh that? I think the judge needs to weigh that, as this Court said in CHEO, yes, Your Honor. But she never made an assessment on the pre-litigation conduct, did she? She didn't explicitly say whether it was or was not substantially justified. It would be our position that, in fact, the agency position was substantially justified because after the error, once the error became apparent to them during the course of litigation, then after this Court said there was jurisdiction and remanded the case, Congress fixed the error. Wait, you want us to reevaluate, to evaluate whether or not... I mean, it seems to me, perhaps she didn't make any... I mean, can you point me to what she concluded with respect to the pre-litigation conduct  She actually absolutely didn't reach that determination, Your Honor. She didn't say... Isn't that a problem? Doesn't she have to evaluate each separate part? I mean, this was a pretty significant portion of what happened down below. I don't believe so, Your Honor. She didn't need to. I don't think the legal standard is that she needs to go in and assess each stage of the case and say whether, at that stage, the government was substantially justified. She only needs to reach a determination overall. It's true she needs to address both the litigation and the pre-litigation stages and say something about them, but she doesn't need to say, I find that was substantially justified and that was not. But she has to find whether it was reasonable or not. How do you evaluate two pieces when you don't draw any conclusions with respect to piece one? She said it was non-determinative. And I read that to mean that she was saying that in the course of this litigation, that was a small piece. Not to say whether it was or was not substantially justified. And it's our view of the law that you don't have to say as a trial court whether it was or was not substantially justified. All you need to say is that you've considered it, that you've addressed it as part of the overall basket. And here she did that. Did she address it? I mean, I understood her to say since the government hadn't acted in bad faith, it wasn't relevant to her decision making. I mean, she said this was just negligence and therefore it can't be a justification for attorney's fees. And that, to me, would seem to be arguably an error of law. I agree, Your Honor. I don't read her opinion as saying that she ignored it. But just to say that in the overall calculus she didn't weigh it as heavily as Shinya would like. She said it was non-determinative. In light of the long litigation about the jurisdictional questions, that's a very reasonable analysis. Not if she applied the wrong standard of law in evaluating it, which is what I understood the point that Judge Moore is making. If she applied the wrong standard, then how can we affirm that? I think she didn't apply the wrong standard, Your Honor. The standard, as I understand it, is that she needs to simply assess it as part of the overall calculus. And she doesn't need to say, with respect to pre-litigation conduct, I find that it is substantially justified. She didn't say that sentence here. But I don't think there's any... But doesn't she have to find whether or not it was reasonable or unreasonable? Isn't that relevant or necessary to her? How do you weigh something unless you've evaluated it? She's got to evaluate it under some legal standard. What is the legal standard? You're absolutely right. She needs to evaluate it. She needs to put them all together and reach an overall evaluation. She doesn't need to necessarily spell out for each one whether she found them to be reasonable or not reasonable. The government in this case opposed combining the A and the C cases at one point. That was non-determinative also. In the whole scheme of things, she didn't say anything about it because it's one of the various government positions within a very long case, and she didn't specifically address that. Here, she specifically addressed the pre-litigation conduct, but she didn't say, I find it's reasonable or I find it's not reasonable. I don't think there's anything in Egypt that requires that. The Supreme Court specifically said the trial court only needs to make one determination. What happens if the trial court here had found the actions unreasonable, but she had concluded that in the scope of things, since the litigation stuff was reasonable, I'm going to weigh that and find that the government's conduct was substantially justified? Is she allowed to do that? Yes, Your Honor. What about if she had found that this portion of it was exceedingly unreasonable, and therefore notwithstanding that their litigation positions were reasonable, the government's conduct was, on the whole, not substantially justified? Would she be within her correct legal analysis to do that? Yes, Your Honor. The statute affords discretion to the trial judge to make those assessments, to weigh these various positions, to say which one she finds reasonable and which one she doesn't. Under this court's decision in Libas, she needs to put enough in her opinion so that it can be reviewed on appeal. But there's no specific guidelines for how she does that. And in this case, she could have said, as to none of them, the underlying positions, whether they were themselves substantially justified, standing alone. But how do we review her if we don't know whether or not she found this piece of the case reasonable or unreasonable? How are we supposed to review an analysis that's incomplete? It's only incomplete, Your Honor, if she was required to say, as to the pre-litigation conduct, whether it was substantially justified, standing alone. I don't believe there's anything in EJA that requires that. So you don't agree with Mr. Baer's position that having made the mistake that started all of this, having admitted that a mistake was made, you don't have to consider whether it was made in bad faith or negligently or whatever other reason, that as long as the government then defends the decision, the wrong decision, that that's enough to avoid the attorney fee statute? It's not our position that that's necessarily enough, Your Honor, but that it's a question for the trial judge to assess and weigh. And it certainly is relevant whether the government was acting in bad faith or not. That's part of the overall calculus that the trial judge needs to make. So you say it doesn't matter that it was a mistake, an admitted mistake, negligently made? Yes, Your Honor. An admitted mistake, negligently made, in some circumstances may be overcome by very reasonable litigation positions and in some cases may not. And that's a question for the trial judge under this Court's precedent. Mr. Goodman, do you think that the government acted reasonably when in its pre-litigation and even, I would have to say, some of the post-litigation conduct because Chenier filed suit in 2000? So do you think the government did act reasonably during that period when it left Chenier off inadvertently, when it was brought to the government's attention this had been done at a time when they could correct it and when they didn't correct it? Do you think that portion, forget about all the jurisdiction, do you think that portion reflects reasonable government action? If it wasn't clear to Commerce at that time, whether they could correct it, then yes, Your Honor. Do you have any evidence in the record because I didn't see any that suggests it wasn't clear to Commerce in that time. All I see in the record is an admission that they were inadvertently left off. So you have this great defense of well, it may not have been clear to them, but I see no declaration from anyone in Commerce or Customs to suggest any of that. So given the record as it exists, do you think that portion of the government's behavior was reasonable? The problem, Your Honor, is that there isn't anything in the record with respect to what Commerce knew or was thinking back then. The only thing we know as far as the position at that point is that there's an error. An error by itself isn't really a position. It's simply an error. Okay, so we have an error, we have notification of the government of the error, and we have failure to correct it in a timely fashion which could have avoided this entire litigation. Do you personally think that's reasonable government behavior? I don't see how you could say it is. I think it's reasonable, Your Honor, only if they didn't think they could fix the error. And since they haven't introduced any evidence showing that they didn't think they could fix the error and it would be their burden to do so because they would be the only ones with that evidence, you'd have to come to the same conclusion that I would. It's unreasonable. And if the underlying agency action in this case is unreasonable, that doesn't get us the whole way. I understand that part of your argument. Okay. I think that we have the argument. Thank you, Mr. Goodman. Mr. Boyle, a couple of minutes. The reason there is no evidence in the record as to whether Commerce knew before we filed a suit that there may have been a problem with the instructions, the only reason there's no such evidence in the record is because the government never raised an issue in this litigation that we had failed to exhaust administrative remedies. This entire suggestion that Commerce didn't know anything about it, didn't know that there was an error maybe couldn't fix it, all came from government counsel's testimony in his EJA application brief, or excuse me, former government counsel's statements in his brief that were no affidavit, totally unverified, not under oath. We objected to his in-brief testimony and in our offer of proof, we offered to buy affidavit and documentary evidence to prove the Chief Judge was not, that we were on Commerce since 1992 to get these liquidation instructions correct specifically for the second review and for the first and the third and the fourth. That we applied to Commerce in 1997 to give us APO access to the second review record so that we could help them formulate the instructions so that they would get it right. We had been going back and forth between Commerce and Customs over this thing since 1991. We were getting batted back and forth between the two agencies. They were like Alphonse and Gaston, each one telling us that the other agency had made the error and they had to correct it. And specifically regarding the second review instructions, in 1998 and 1999, we learned, because of the liquidation in Los Angeles that shouldn't have happened, that there was a remission from these instructions of our identity. And we went to Commerce, the case worker there, she's still there. We went to her and we said, you've got to add our name to this. Here's everything that's happened before. She had been newly assigned to the matter. We offered to show all of this to Judge Vestani. She refused to add our name. And in October of 1999, we sent a letter to both Commerce and Customs, and this is mentioned in the record, where we said, you left our name out of the second review instructions. You may have left customers off of the instructions. You got the right results in the third, in the first, in the fourth. Please let us help you get the right results in the second. And if you don't get back to us, we're going to have to file suit. That letter was sent to Commerce and Customs. So the government council's representation, the Commerce knew nothing about any problem, had no way of knowing if there was an issue here. It's an outright lie. And we offered to prove that to Chief Judge Vestani, and she wouldn't let us do it. I see my time has expired. Okay. Thank you, Mr. Beyer and Mr. Goodman. Case is taken under submission.